UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

MICHAEL SMITH,

                        Plaintiff,

           v.

COUNTY OF NASSAU, POLICE OFFICER
TIMOTHY SLEVIN, in his official and individual
capacities, POLICE OFFICER MARTIN
HELMKE, in his official and individual capacities,
POLICE OFFICERS JOHN and JANE DOES
1–10, in their official and individual capacities,
ZURICH ASSOCIATES, LTD., ANNA
GAETANO, in her official and individual
capacities, and HARRY G.TEREZAKIS in
his official and individual capacities,

                        Defendants.

-----------------------------------------------------------------

NOT FOR PUBLICATION

**<u>MEMORANDUM & ORDER</u>**
10-CV-4874 (MKB)

MARGO K. BRODIE, United States District Judge:

      Plaintiff Michael Smith commenced the above-captioned action against Defendants

County of Nassau, Police Officers Timothy Slevin, James Healey, Martin Helmke, Nicole

LoDuca, and John and Jane Does 1–10, in their official and individual capacities, Zurich

Associates, Ltd. ("Zurich Associates"), Anna Gaetano, in her official and individual capacity,

and Harry G. Terezakis, in his official and individual capacity, asserting due process, false arrest,

malicious prosecution, abuse of process, and municipal liability, pursuant to 42 U.S.C. § 1983,

and state law claims for gross negligence, forcible eviction, and assault and battery.  (Compl.,

Docket Entry No. 1.)  On February 12, 2014, the Court dismissed the claims against Healy and

LoDuca, as withdrawn by Plaintiff.  (Order dated February 12, 2014.)  On April 20, 2014, the

County of Nassau, Slevin and Helmke, (collectively, the "County Defendants"), moved for

summary judgment seeking to dismiss Plaintiff's claims.[1]  (Mem. of Law in Support of Cnty.

Defs. Mot. for Summary Judgment ("Def. Mem."), Docket Entry No. 83.)  On April 22, 2014,

Gaetano submitted an affidavit in support of an order dismissing this action.  (Aff. of Def. Anna

Gaetano in Resp. & Opp'n to Pl. Mem. of Law ("Gaetano Aff."), Docket Entry No. 86.)  The

Court referred the County Defendants' motion for summary judgment to Magistrate Judge

Steven I. Locke for a report and recommendation.  (Order dated October 10, 2014.)

By report and recommendation dated January 6, 2015 ("R&R"), Judge Locke

recommended that the Court (1) grant the County Defendants' motion for summary judgment in

its entirety and (2) *sua sponte* dismiss the claims asserted against Zurich Associates, Gaetano and

Terezakis, (collectively, the "Owner Defendants").  (R&R, Docket Entry No. 92.)  On January

20, 2015, Plaintiff filed objections to Judge Locke's R&R.  (Pl. Objections to the Report and

Recommendation issued by Magistrate Steven I. Locke ("Pl. Obj."), Docket Entry No. 94.)

Gaetano and the County Defendants filed responses to Plaintiff's objections.  (Docket Entry Nos.

95, 96.)  For the reasons set forth below, the Court adopts in part, and declines to adopt in part,

Judge Locke's R&R.  The Court adopts Judge Locke's conclusions as to Plaintiff's due process,

malicious prosecution, and municipal liability claims for the reasons set forth herein, and

declines to adopt the R&R's conclusions with respect to Plaintiff's false arrest and abuse of

process.  The Court grants the County Defendants' motion for summary judgment as to

---

[1]  County Defendants did not move as to Plaintiff's claims for negligence, assault and battery, or "forcible eviction" under section 853 of New York's Real Property Actions and Procedure Law, and these claims are therefore not before the Court.  Having recommended that the Court dismiss all of Plaintiff's federal claims, Judge Locke also recommended that "in the interest of comity" the Court should decline to exercise supplemental jurisdiction over the state law claims.  (R&R 24.)  Because the Court denies the County Defendants' motion for summary judgment as to Plaintiff's false arrest and abuse of process claims, the Court declines to adopt the portion of Judge Locke's R&R recommending disposition of these claims.

Plaintiff's due process, malicious prosecution, and *Monell* claims. The Court denies the County Defendants' summary judgment motion as to the false arrest and abuse of process claims. The Court denies the County Defendants' summary judgment motion on the basis of qualified immunity. To the extent Gaetano's affidavit was intended to serve as a motion for summary judgment, the Court grants it in part, and dismisses the Section 1983 claims against Gaetano.

## I.   Background[2]

### a.   Plaintiff's "lease" of 79 William Street, Roosevelt, New York

On or about late September 2009, Plaintiff asked a family friend if he knew of any properties available for rent. (Transcript of the examination of Michael Smith pursuant to Section 50-h of the New York General Municipal Law ("Pl. 50-h Tr.") 12:2–10, annexed to the Calliste Decl. as Ex. B.) While he was speaking to his family friend, a man named Russell Gutner approached him and said that he had several properties available for rent. (*Id*. at 18:2–11.) Gutner told Plaintiff that he had one property in Roosevelt, New York, that was in the process of being repaired to be rented. (*Id*. at 18:12–22.) The rental property was located at 79 William Street in Roosevelt, New York (the "Property").

Within the next two or three days, Plaintiff called Gutner to see when the Property would be available for viewing. (*Id*. at 19:5–9, 20:8–17.) During this conversation, Plaintiff told Gutner that he does contracting work, and that he would be willing to finish the repairs to the Property if it would result in Plaintiff moving into the Property sooner. (*Id*. at 20:8–17.) Gutner

---

[2] The Court construes the evidence in the light most favorable to Plaintiff. *See Barclay v. New York*, No. 12-CV-1593, --- F. App'x ---, ---, 2015 WL 727963, at *1 (2d Cir. Feb 20, 2015) ("Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-moving party . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." (citing *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 45 (2d Cir. 2000) and Fed. R. Civ. P. 56(a)).)

identified himself to Plaintiff as an agent of the owners of the Property, (*id.* at 24:21–25), but did not tell Plaintiff who owned the Property.[3] (*Id.* at 25:2–3.) Approximately a week and a half after this conversation, Plaintiff viewed the Property with Gunther, and negotiated the terms of the rental. (*Id.* at 25:4–14.)

Plaintiff and Gutner agreed that Plaintiff would complete the repairs on the Property and pay approximately $2400 in advance of his occupancy to lease the Property for three months.[4] (*Id.* at 25:17–26:18.) Plaintiff signed a lease agreement, paid $2400 to Gutner, and Gutner gave Plaintiff a receipt for the $2400. (*Id.* at 30:13–15; *see* Pl. 56.1 ¶ 10; Def. 56.1 ¶ 10.) Plaintiff began to occupy the Property the following day. (Pl. 50-h Tr. 34:22–36:21.)

### b. The events of October 12, 2009

On October 12, 2009, Nassau County police officers Andrew Huksloot and Nicole LoDuca responded to a 9-1-1 call from the Property. (Pl. 56.1 ¶ 5; Def. 56.1 ¶ 5.) Plaintiff testified, at a hearing conducted pursuant to Section 50-h of the General Municipal Law, that he had called the police after a woman, later identified as Gaetano, came to the Property, and

---

[3] There is some dispute between the parties as to who owns the Property. The parties agree that on March 5, 2009, the Property was sold to Zurich Associates. (Pl. 56.1 ¶ 1; Def. 56.1 ¶ 1.) However, the County Defendants assert in their Local 56.1 statement, without any evidentiary support, that Terezakis is the sole shareholder of Zurich Associates, (Def. 56.1 ¶ 2). Gaetano, identified herself at her deposition as a former property manager for Zurich Associates and testified that in 2009 she had an ownership interest in the Property. (Transcript of the deposition of Anna Gaetano ("Gaetano Dep.") 7:19–22, 11:10–19, 35:6–36:19, annexed to the Decl. of Gregory Calliste, Jr. in Support of Pl. Mem in Opp'n ("Calliste Decl.") as Ex. C.) Gaetano testified that Terezakis verbally gave her a "percentage" of the Property and acknowledged that her name did not appear in any ownership documents relating to the Property. (*Id.* at 35:6–23.) Gaetano did not invest any money in the Property. (*Id.* at 37:3–5.)

[4] Plaintiff also testified that Gutner agreed to a six-month extension of the lease if Plaintiff completed the work on the Property. (Pl. 50-h Tr. 25:17–24.)

claimed to be the owner of the Property.[5]  (Pl. 50-h Tr. 45:17–48:9.)  Plaintiff told Gaetano that

he was leasing the Property and provided her with a copy of the lease agreement and the receipt

he received from Gutner.  (*Id*. at 48:5–8.)  Later that day, Terezakis also came to the Property

and identified himself as the owner.  (*Id*. at 51:2–4.)

     Plaintiff called the police and Huksloot and LoDuca responded to the call.  (*See id*.

48:8−9.)  Upon reviewing Plaintiff's lease and rental receipt, Huksloot and LoDuca informed

Terezakis and Gaetano that this was a "civil matter" and encouraged the parties to resolve it

amongst themselves.  (*Id*. at 51:7–13.)  Terezakis offered Plaintiff money to leave the Property,

which Plaintiff refused because it was less money than he had paid to Gutner.  (*Id*. at 51:17–21.)

At that point, Terezakis told Plaintiff that he could continue to occupy the Property until they

could "come up with something."  (*Id*. at 51:22–24.)  According to Plaintiff, Terezakis indicated,

in the presence of Huksloot and LoDuca, that Plaintiff could remain at the Property temporarily

while Terezakis spoke with his business partners, and that they would either give Plaintiff his

money back, or find Plaintiff another place to live.[6]  (*Id*. at 52:7–13.)  Plaintiff believed that

Gutner and Terezakis worked for the same company.  (*Id*. at 51:17–21.)

---

[5]  The record suggests that two different women came to the Property on October 12, 2009, Wanda Craft and Anna Gaetano.  Plaintiff testified that his fiancée called him when a woman, later identified as Wanda Craft, tried to enter the Property.  When Plaintiff arrived at the Property, a different woman, Anna Gaetano, was at the Property.  (*See generally* Pl. 50-h Tr. 47−57.)

[6]  Plaintiff testified that a few days after October 12, 2009, another man, who refused to identify himself, came to the Property, and told Plaintiff that he had purchased the Property and was the owner.  (Pl. 50-h Tr. 54:5−10.)  This man asked Plaintiff whether he had "g[otten]" the Property from Terezakis.  (*Id*. at 54:22−55:3–4.)  Plaintiff denied that he obtained the Property from Terezakis but explained that others had recently been to the Property also claiming they too had recently purchased the Property.  (*Id*. at 55:13–20.)  When Plaintiff asked for the man's contact information to resolve the issue, he refused and said that he would take care of it with Terezakis.  (*Id*. at 55:15–23.)  The man then left the Property.  (*Id*. at 55:22–23.)

### c. Complaints filed with the police

#### i. Plaintiff's complaint

On October 12, 2009, Plaintiff signed a "Supporting Deposition" against Gutner, which was witnessed by Huksloot.[7] (Police Department, County of Nassau, N.Y., Supporting Deposition of Michael Smith ("Pl. Supp. Dep."), annexed to the Decl. of Liora M. Ben-Sorek in support of Defs. Mot. for Summary Judgment ("Ben-Sorek Decl.") as Ex. C.)  In the Supporting Deposition, Plaintiff explains that he signed a lease for the Property and that Gutner had represented to him that the Property was his aunt's home.  (*Id*. at 1–2.)  Plaintiff further describes the events of October 12, 2009, stating that he learned that Terezakis was the true owner of the Property, at which point, Plaintiff states he "realized [he] was the victim of a scam."  (*Id*. at 2.)

#### ii. Terezakis' complaints

Also on October 12, 2009, Terezakis prepared and signed a "Supporting Deposition," witnessed by LoDuca.  (Police Department, County of Nassau, N.Y., Supporting Deposition of Harry G. Terezakis ("Terezakis Supp. Dep."), annexed to Ben-Sorek Decl. as Ex. D.)  In his Supporting Deposition, Terezakis explained the events of October 12, 2009, stating that he learned from his "property manager," Gaetano, that Plaintiff was living in the Property, which was according to the statement, Terezakis' home.  (*Id*. at 1.)  According to Terezakis, the Property "ha[d] been vacant for the [seven] months that [he had] owned it.  (*Id*.)  Terezakis did not know Gutner, Gutner had "no rights" to the Property, and he did not give anyone permission to move into the Property.  (*Id*.)

A few days later, Terezakis prepared a "Complainant Interview Sheet" against Plaintiff,

---

[7] According to the Supporting Deposition, police officer Huksloot wrote the statement but Plaintiff affirmed its accuracy.  (Pl. Supp. Dep. 2.)

dated October 16, 2009 ("Trespass Complaint"). (Complainant Interview Sheet, annexed to the Ben-Sorek Decl. as Ex. E.) The Trespass Complaint identifies Terezakis and Zurich Associates as complainants, provides Terezakis or Zurich Associates' contact information, and identifies Plaintiff as the "defendant" and Gaetano as a witness. (*Id.* at 1.) The Trespass Complaint states that on October 12, 2009, Terezakis learned that the locks were changed at his Property and that Plaintiff was "renting" the Property. (*Id.* at 2.) Plaintiff showed him his lease for the Property and the rental receipts, at which point, Terezakis called the police and "filed a report." (*Id.*) On October 13, 2009, Plaintiff called Gaetano to ask about the return of the money he paid Gutner and stated that he would leave the Property after he received the money. (*Id.*)

By letter dated October 16, 2009, the Office of the District Attorney for Nassau County notified Terezakis that his complaint had been reviewed and it had been "determined that it would best be dealt with by the First Squad of the Nassau County Police Department." (Ltr. dated Oct. 16, 2009, annexed to the Ben-Sorek Decl. as Ex. E and the Calliste Decl. as Ex. L.) According to an Inter-Departmental Memorandum dated October 16, 2009 from Assistant District Attorney Warren N. Thurer, Terezakis' Trespass Complaint was forwarded to police detective Slevin for "inclusion in [his] ongoing investigation." (Inter-Office Memo dated Oct. 16, 2009, annexed to the Ben-Sorek Decl. as Ex. E and the Calliste Decl. as Ex. L.)

### d.   "Home invasion" at the Property

In or about late October 2009, Plaintiff returned to the Property and found the locks on the doors had been changed, the back door had been kicked in, and some of his personal belongings were damaged or missing. (Pl. 50-h Tr. 59:11–24.) Plaintiff called the police and filed a report. (*Id.* at 59:25–60:1.) Plaintiff told the police that he wanted "whoever [was responsible for the invasion to] be prosecuted to the fullest extent of the law." (*Id.* at 60:5–7.)

According to Plaintiff, he told the police officers that he believed that Gaetano was involved in the invasion because the locks on the door were changed. (*Id.* at 62:5–17.)

The next day, Gaetano called Plaintiff and told him that she was "taking [her] house back," and that she was the one who arranged for her friend, a police officer, to "break" into the Property. (*Id.* at 61:9–17, 69:2–18.) Gaetano told Plaintiff that he should "get the F out of [the Property]" and that she was going to make sure that Terezakis does not pay Plaintiff any money. (*Id.* at 70:1–8.) Plaintiff told Gaetano that she was going to jail because he reported the break-in to the police. (*Id.* at 70:14–21.)

### e. The events of October 23, 2009

On October 23, 2009, while Plaintiff was away from the Property, he received a telephone call from two friends who were staying at the Property, stating that someone was trying to break in. (*Id.* at 67:12–22.) When Plaintiff arrived at the Property, Gaetano and another individual were inside a car parked "up the block" from the Property. (*Id.* at 71:3–21.) Plaintiff called the police to report the attempted break-in. (*Id.* at 74:3–5.) When Plaintiff told Gaetano that he was calling the police, she responded stating, "I don't know what for. You shouldn't be here. Get the F out of my house." (*Id.* at 72:13–73:2.) Gaetano further told Plaintiff that her friend that broke into the Property earlier was a police officer "so there's nothing [he] can do about it." (*Id.* at 73:8–11.) Gaetano said "I'm going to get him" and drove away. (*Id.* at 73:12−73:15.) Plaintiff understood Gaetano to be referring to her friend who is a police officer. (*Id.* at 73:16–17.)

Several police officers arrived at the Property, including Slevin and Helmke. (*See id.* at 75:22–76:4.) After the police arrived, Gaetano returned to the Property. (*Id.* at 75:5–13.) Plaintiff tried to speak to Slevin who told him that he did not "give a damn what [Plaintiff] [had]

to say" and that Plaintiff was "going to get out [of] the house." (*Id.* at 78:14–22.) Slevin pushed Plaintiff and told him that he had to get out of the Property or he was going to jail. (*Id.* at 79:10−12.) The police officers also began throwing Plaintiff's property out onto the street. (*Id.* at 81:18–25.) While the police officers were "evicting" Plaintiff, Plaintiff called both his attorney and the "Sherriff's Department." Plaintiff told the Sherriff's Department that the police officers at the Property were claiming to have a "legal right" to evict him, to which a representative of the Sherriff's Department told him "No, that's what we do. That's our department. And we have nothing on an eviction [at] that address." (*Id.* at 107:20–108:6.)

Upon being notified of what was happening at the Property, Plaintiff's attorney sent someone to video record the events. (Pl. 50-h Tr. 94:14–95:9.) Plaintiff submitted a copy of a video recording of the events in opposition to Defendants' motion for summary judgment. (Video Recording of Arrest, annexed to Calliste Decl. as Ex. K.) The video recording depicts Plaintiff standing outside the Property on the sidewalk and street, describing to the individual who was recording the video what happened when the police first arrived at the Property. (*Id.*) Plaintiff states on the video recording that, among other things, the police officers gathered his belongings and physically pushed him out of the Property, telling him that he had to leave the Property or be arrested. (*Id.*) Plaintiff states that he asked one of the police officers what gives them the authority to evict him, to which the officer refused to answer. (*Id.*) The video depicts a van with several large bags in the trunk, which Plaintiff explains are his personal belongings which were removed from the Property. (*Id.*) The video shows Plaintiff asking the officers and detectives for their "paperwork" for the eviction, to which he receives no response. (*Id.*) At one point in the video, an individual who is not on-screen asks one of the officers if the area was a "crime scene," to which one officer responds, "there is no crime here." (*Id.*)

While standing on the sidewalk outside the Property, and speaking to his lawyer on the telephone, Plaintiff states to Slevin, "my lawyer said you're doing a wrongful eviction." (*Id.*) Slevin responds, "Tell your lawyer you're under arrest." (*Id.*) Slevin is then seen placing handcuffs on Plaintiff and directing him to a police vehicle.[8] (*Id.*)

### f. Prosecution of Plaintiff

Plaintiff was charged with criminal trespass in the second degree, N.Y. Penal Law § 140.15, and criminal trespass in the third degree, N.Y. Penal Law § 149.10. (Information, *People v. Smith*, No. 2009NA027412, annexed to the Calliste Decl. as Ex. J.) The Information, sworn to by Slevin, states that,

> [Plaintiff] did knowingly and unlawfully enter and remain in a dwelling. At the time and place aforesaid, the locks were found to be changed at [the Property] and [Plaintiff was] unlawfully inside of same. The residence had been previously partially boarded to prevent unlawful entry into same. The residence, upon further inspection conducted by [Slevin] was found to have no furniture, and just scattered clothing items located in a main floor bedroom. There were no items of mail, in [Plaintiff's] name, found at the residence. The [Plaintiff] had been advised previously, that he had no permission or authority to be inside of the residence.

(*Id.*)[9] Plaintiff moved before the Honorable Andrew M. Engel of the District Court of the

---

[8] Frederick Brewington, Plaintiff's attorney, filed a civilian complaint with the Nassau County Police Department stating that Plaintiff was "illegally evicted." (Civilian Complaint Disposition, annexed to the Calliste Decl. as Ex. P.) The complaint was deemed unfounded. Among other things noted in the disposition report of the complaint is the finding that the [Property] was reported "empty" by Slevin and Helmke and contained "no furniture, clothing, mail, food, or any other indication that [the Property] was lived in." (*Id.*) The report concludes that "[t]here is sufficient probable cause that [Plaintiff] did not ever reside at the [Property]." (*Id.*)

[9] Although the Information suggests that Plaintiff was charged with criminal trespassing based on being found at the Property on October 23, 2009 after being "advised previously[] that he had no permission or authority to be inside the residence," Slevin testified at his deposition

County of Nassau, First District, Criminal Term ("Nassau County Criminal Court"), to dismiss the criminal trespass in the third degree charge for facial insufficiency, and to dismiss both charges for lack of probable cause. (Decision and Order dated March 25, 2010 ("March 2010 Order"), *People v. Smith*, No. 2009NA027412, annexed to the Calliste Decl. as Ex. O.) By Decision and Order dated March 25, 2010, Judge Engel dismissed the criminal trespass in the third degree charge for facial insufficiency. (*Id.* at 5.) Judge Engel noted that while there was no motion before him to dismiss the criminal trespass in the second degree charge for facial insufficiency, "the court cannot help but notice certain inherent contradictions among and within the supporting depositions upon which the People rely." (*Id.*) Judge Engel noted that while Terezakis claimed in his supporting deposition dated October 12, 2009, that he was an owner of the Property, and that Gaetano was his property manager, in one of Gaetano's supporting deposition, she states that she is the owner of the Property, and in a different supporting deposition, Gaetano states that the deed to the Property is actually in the name of Zurich Associates. (*Id.*) Judge Engel also noted that neither Terezakis nor Gaetano explained their relationship to Zurich Associates. (*Id.*) Judge Engel denied Plaintiff's motion to dismiss the criminal trespass in the second degree charge because "[l]ack of probable cause is not, in and of itself, one of the bases for dismissal." (*Id.* at 6.)

By Decision and Order dated June 18, 2010, Judge Engel granted Plaintiff's motion to dismiss and dismissed the criminal trespass in the second degree charge against Plaintiff for facial insufficiency. (Decision and Order dated June 18, 2010 ("June 2010 Order"), *People v.*

---

that he arrested Plaintiff when Plaintiff "made an attempt to get back inside the property line." (Deposition of Timothy Slevin ("Slevin Dep.") 133:8–15, annexed to the Calliste Decl. as Ex. D.)

*Smith*, No. 2009NA027412, annexed to the Calliste Decl. as Ex. O.) In this decision, Judge

Engel noted that "none of the supporting depositions establish who is the true owner of the

[Property] and what authority, if any, Mr. Terezakis and/or Gaetano had to tell [Plaintiff] he

could not remain in the [Property] . . . . Their self-serving declarations of ownership are no more

valid and authenticated than [Plaintiff's] representation to them that he had a valid lease for the

[Property]." (*Id.*) Judge Engel refered to the March 2010 Decision, stating "[t]he court

previously noted these deficiencies in [the March 2010 Decision], yet the People have neither

remedied same nor evinced any intention or ability to do so." (*Id.*)

## II. Discussion

### a. Standards of review

#### i. Report and recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject,

or modify, in whole or in part, the findings or recommendations made by the magistrate

judge." 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and

recommendation, the district court reviews the parts of the report and recommendation to which

the party objected under a *de novo* standard of review. 28 U.S.C. § 636(b)(1)(C); *see*

*also Larocco v. Jackson*, No. 10–CV–1651, 2010 WL 5068006, at *2 (E.D.N.Y. Dec. 6, 2010).

The district court may adopt those portions of the recommended ruling to which no timely

objections have been made, provided no clear error is apparent from the face of the record. 28

U.S.C. § 636(b)(1)(C); *see also Larocco*, 2010 WL 5068006, at *2. The clearly erroneous

standard also applies when a party makes only conclusory or general objections, or simply

reiterates its original arguments. *See Rahman v. Fischer*, No. 10–CV–1496, 2014 WL 688980, at

*1 (N.D.N.Y. Feb. 20, 2014) ("If no objections are made, or if an objection is general,

conclusory, perfunctory, or a mere reiteration of an argument made to the magistrate judge, a district court need review that aspect of a report-recommendation only for clear error." (citations omitted)); *Time Square Foods Imports LLC v. Philbin*, No. 12–CV–9101, 2014 WL 521242, at *2 (S.D.N.Y. Feb. 10, 2014) (clearly erroneous standard applies when party reiterates arguments made to the magistrate judge); *see also DePrima v. City of New York Dep't of Educ.*, No. 12–CV–3626, 2014 WL 1155282, at *3 (E.D.N.Y. Mar. 20, 2014) (collecting cases).

### ii. Summary judgment

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Bronzini v. Classic Sec., L.L.C.*, 558 F. App'x. 89, 89 (2d Cir. 2014); *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir.2013); *Kwong v. Bloomberg*, 723 F.3d 160, 164–65 (2d Cir.2013). The role of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

### b. Report and Recommendation and Plaintiff's objections

In his R&R, Judge Locke recommends that the Court grant the County Defendants' motion for summary judgment in its entirety. Judge Locke bases this conclusion on his findings that (1) Plaintiff has not stated a cognizable property interest under New York law, necessary to sustain his due process claim against the Defendants, (2) police officers Slevin and Helmke had either actual probable cause or arguable probable cause, defeating Plaintiff's malicious prosecution, false arrest, and abuse of process claims or entitling Slevin and Helmke to qualified immunity, and (3) unsubstantiated civilian complaints against police officers Slevin and Helmke are insufficient to sustain a claim for municipal liability. (R&R 10–22.) Plaintiff has objected to Judge Locke's conclusion with respect to the due process, false arrest, malicious prosecution, and abuse of process claims. The Court therefore reviews Defendants' motion for summary judgment as to these claims *de novo*.[10]

### i. Due process

Plaintiff asserts a due process violation based on his "wrongful eviction" from the

---

[10] In their response to Plaintiff's objections to the R&R, the County Defendants argue that the Court should not apply a *de novo* standard of review to the R&R granting their motion for summary judgment, but rather, should assess Judge Locke's R&R for "clear error." (Mem. of Law in Resp. to Pl. Obj. ("Def. Resp.") 3–5, Docket Entry No. 96.) The County Defendants contend that a *de novo* standard of review is inappropriate here where Plaintiff's objections merely reiterate the arguments made before Judge Locke. (*Id.*) The Court disagrees with the County Defendants' characterization of Plaintiff's objections. Plaintiff has made specific and separate arguments with respect to the R&R, including, among other things, that it ignores certain disputes of fact precluding summary judgment. Accordingly, the Court is obligated to review those portions of the R&R to which Plaintiff objects under a *de novo* standard of review.

However, the Court notes that Plaintiff did not object to Judge Locke's recommendation with respect to his municipal liability claim asserted pursuant to *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658 (1978). The Court has reviewed this unopposed portion of the R&R, and finding no clear error, the Court adopts Judge Locke's recommendation as to this claim pursuant to 28 U.S.C. § 636(b)(1).

Property.  In the R&R, Judge Locke recommends that the Court dismiss this claim because

Plaintiff has failed to demonstrate that "he had a cognizable property interest under New York

law of which he could have been deprived without due process."  (R&R 10.)  Judge Locke

determined that, under New York law, while tenants have a cognizable property interest in the

"continued occupancy of their housing," Plaintiff was not a tenant, but rather, either a squatter or

a licensee and neither status confers a property interest.  (*Id*. at 10–12.)  Plaintiff objects to this

finding, arguing that Judge Locke ignored "issues of fact," which precludes the Court from

granting summary judgment in Defendants' favor.  (Pl. Obj. 11.)  According to Plaintiff, the

evidence demonstrates that he was not a squatter, but, at a minimum, a licensee, and there is a

dispute of fact as to whether his license to remain on the Property was ever properly revoked,

and relatedly, whether in accordance with his due process rights as a licensee, he was "given a

reasonable opportunity to vacate" the Property.  (*Id*. at 12–13.)  Plaintiff further contends that a

reasonable jury could conclude that he was a lawful *tenant* of the Property, not just a licensee.

(*Id*. at 12.)  For the reasons set forth below, the Court finds, in accordance with Judge Locke's

R&R, that Plaintiff cannot demonstrate a cognizable property interest, and therefore dismisses

Plaintiff's due process claim.

In order to establish a procedural due process claim, a plaintiff must prove: (1) a

"protected property or liberty interest," (2) defendants' denial of that interest, and (3) evidence

that the denial was effected "without due process."  *Palacio v. Pagan*, 345 F. App'x 668, 669 (2d

Cir. 2009) (citing *McMenemy v. City of Rochester*, 241 F.3d 279, 285–86 (2d Cir. 2001)).

"While property interests are constitutionally protected, they are not generally constitutionally

*established*; rather, 'they are created and their dimensions are defined by existing rules or

understandings that stem from an independent source such as state law — rules or

understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Velez v. Levy*, 401 F.3d 75, 85 (2d Cir. 2005) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). Thus, in order to assert a property interest, a plaintiff cannot rely on an "'abstract need or desire for it,' nor [on] a 'unilateral expectation of it,' [instead,] a plaintiff must have a 'legitimate claim of entitlement to it.'" *Safepath Sys. LLC v. N.Y.C. Dep't of Educ.*, 563 F. App'x 851, 855 (2d Cir. 2014) (citing *Bd. of Regents of State Colleges*, 408 U.S. at 577). Here, Plaintiff appears to assert that he had a property interest in the Property derived from his status as a licensee or, alternatively, as a tenant of the Property. (Pl. Obj. 11 –14.)

### 1. Plaintiff had no property interest as a squatter or licensee

Plaintiff argues that, contrary to Defendants' assertions, he was not a squatter at the Property, rather, at a minimum, he became a licensee when Terezakis allowed him to stay at the Property.[11] (Pl. Obj. 11–12.)

### A. Squatter

To the extent that Plaintiff was a squatter, he had no legal right to remain on the Property, and therefore cannot assert a cognizable property interest in the continued occupancy of the Property. *See Walls v. Giuliani*, 916 F. Supp. 214, 218 (E.D.N.Y. 1996) (noting that New York law "does not confer any property interest on squatters"); *De Villar v. City of New York*, 628 F. Supp. 80, 83 (S.D.N.Y. 1986) ("[T]he plaintiffs had no more of a property interest in th[e] apartments [they entered illegally] than in any others in the City they may have trespassed into

---

[11] The Court notes that while the County Defendants characterize Plaintiff as a squatter or trespasser in their memorandum of law in support of their motion for summary judgement, this fact is disputed not only by Plaintiff's deposition testimony, but by Gaetano's own statement at her deposition indicating that on October 12, 2009, Terezakis allowed Plaintiff to stay at the Property in the short term, and indicated that he would "help" Plaintiff by giving him money to leave. (Gaetano Dep. 52:2–53:7.)

and encamped within, that is none at all."); *Morillo v. City of New York*, 582 N.Y.S.2d 387, 390 (App. Div. 1992) ("[U]nder New York law, a mere squatter *as such* has no property interest in the real property being occupied or in continual occupancy." (citing *Morillo v. City of New York*, 574 N.Y.S.2d 459, 463 (Sup. Ct. 1991)).  However, Plaintiff claims that he was a licensee.  (Pl. Opp'n 10–11.)  In view of the sworn testimony by Plaintiff and Gaetano indicating that Terezakis gave Plaintiff permission on October 12, 2009 to remain on the Property, the Court finds that there is sufficient evidence demonstrating that Plaintiff was not a squatter, but a licensee.  (*See* Pl. 50-h Tr. 51:2–53:14; Gaetano Dep. 52:2–53:7.)

### B.   Licensee

A licensee is defined as "[a] person who has a privilege to enter upon land arising from the permission or consent, express or implied, of the possessor of land but who goes on the land for his own purpose rather than for any purpose or interest of the possessor." *Gladsky v. Sessa*, No. 06-CV-3134, 2007 WL 2769494, at *8 (E.D.N.Y. Sept. 21, 2007) (quoting Black's Law Dictionary 921 (6th Ed. 1990)) (noting "[t]his definition is consistent with [the interpretation] employed by New York courts" and collecting cases); *see Nauth v. Nauth*, 981 N.Y.S.2d 266, 268 (Civil Ct. 2013) ("While no explicit definition of 'licensee' is provided [in relevant section of New York Real Property Actions and Proceedings Law], a licensee in a landlord/tenant context is generally defined as someone who is granted permission, express or implied, by the owner to use and/or occupy the subject premises.").  A licensee is differentiated from a tenant under New York law:  "Whereas a license connotes use or occupancy of the grantor's premises, a lease grants exclusive possession of designated space to a tenant, subject to rights specifically reserved by the lessor." *Am. Jewish Theatre, Inc. v. Roundabout Theatre Co., Inc.*, 610 N.Y.S.2d 256, 257 (App. Div. 1994).  A license is "cancellable at will, and without cause." *Id.*

Accordingly, licensees, as opposed to tenants, do not have a cognizable property interest in the continued occupancy of a property. *Pelt v. City of New York*, No. 11-CV-5633, 2013 WL 4647500, at *8–9 (E.D.N.Y. Aug. 28, 2013) ("Under New York law, it is well settled that a 'licensee acquires no possessory interest in property.'" (collecting cases)); *Gladsky*, 2007 WL 2769494, at *8 ("It has long been the rule in New York that a licensee, as opposed to a tenant or one having a greater interest in the use o[f] particular real property, cannot maintain an action for wrongful eviction." (citation and internal quotation marks omitted)); *Coppa v. LaSpina*, 839 N.Y.S.2d 780, 783 (App. Div. 2007) (finding that the defendants could "peaceably excuse" the plaintiff from their property "without resort to legal process" because the plaintiff was a licensee); *Visken v. Oriole Realty Corp.*, 759 N.Y.S.2d 523, 525 (App. Div. 2003) ("Since the plaintiff was a mere licensee or 'squatter' [the defendant], as owner, had an owner's common-law right to oust her without legal process." (citation omitted)); *P & A Bros. v. City of New York Dep't of Park & Recreation*, 585 N.Y.S.2d 335, 336 (App. Div. 1992) (noting that a "servant or licensee acquires no possessory interest in property" (citing *Napier v. Spielmann*, 196 N.Y. 575 (1909), *aff'g*, 111 N.Y.S. 983 (App. Div. 1908)); *cf. White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1062 (2d Cir. 1993) ("An interest that state law permits to be terminated at the whim of another person is not a property right that is protected by the Due Process Clause." (citing *Bishop v. Wood*, 426 U.S. 341, 345–47 (1976) and *Goetz v. Windsor Central Sch. Dist.*, 698 F.2d 606, 608–09 (2d Cir. 1983))). Thus, even accepting Plaintiff's self-characterization as a licensee, because his status as a licensee conferred no cognizable property interest in the Property, Plaintiff cannot sustain a due process claim based on his eviction. *See Clifford v. U.S. Coast Guard*, 548 F. App'x 23, 25 (2d Cir. 2013) (affirming dismissal of due process claim because plaintiff failed to allege a cognizable due process claim); *Rosendale v. Iuliano*, 63 F.

App'x 52, 53 (2d Cir. 2003) (finding that the plaintiff's "substantive and procedural due process claims fail because he has established no cognizable property interest . . . ." (citing *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 191–93 (2d Cir. 1994)).

In addition, the Court rejects Plaintiff's argument that, even as a licensee, he enjoyed the right "to be given a reasonable opportunity to vacate the premises." (Pl. Obj. 13.) As part of this argument, Plaintiff asserts that he was never told by Terezakis that he no longer had permission to stay on the Property, and accordingly, his license to remain on the Property was never revoked before he was evicted. (*Id*. at 12.) New York law, however, does not confer any affirmative rights on licensees requiring them to be given "a reasonable opportunity to vacate a property" and Plaintiff does not provide any support for this assertion. Under section 713 of the New York Real Property Actions and Proceedings Law ("RPAPL"), "[a] special proceeding *may* be maintained . . . after a ten-day notice . . . [against] . . . a licensee [whose] . . . license has expired, or . . . his license has been revoked by the licensor." (RPAPL § 713(7) (emphasis added).) This special proceeding under RPAPL section 713 was established to provide a "procedure to recover possession of property which is being held by a licensee whose license has been revoked or terminated provided a ten day notice to recover the property is served." *P & A Bros., Inc.*, 585 N.Y.S.2d at 336. However, this process to remove licensees is merely permissive, not mandatory, as it does not replace an owner's right to self-help in removing a licensee from a property, and therefore, does not confer any affirmative rights to licensees. *See Pelt*, 2013 WL 4647500, at *9 (RPAPL section 713 "does not obligate landlords to provide notice to licensees prior to eviction from a premises; nor does [section] 713 confer upon licensees a constitutionally protected property interest in[,] or legal right to[,] that premises." (citing *De Villa*, 628 F. Supp. at 84)); *Gladsky*, 2007 WL 2769494, at *8 ("Although RPAPL [section] 713 does permit a

19

special proceeding as an additional means of effectuating the removal of a nontenant, such as a licensee, it 'does not replace an owner's common law right to oust an interloper without legal process.'" (quoting *P& A Bros.*, 585 N.Y.S.2d 336)).  For these reasons, the Court finds that Plaintiff has failed to state a due process violation based on his status as a licensee at the Property.

### 2.  Plaintiff was not a lawful tenant of the Property

While Plaintiff argued in his opposition to Defendants' motion for summary judgment that he was a licensee, (Pl. Opp'n 10–11), he now asserts in his objections to the R&R that there is an issue of fact as to whether he was a tenant, (Pl. Obj. 12).  Even if the Court credited this allegation, which it is not obligated to do,[12] the Court finds that it is unsupported by the record.

New York law defines a tenant as:

> a person occupying or entitled to occupy a residential rental premises who is either a party to the lease or rental agreement for such premises or is a statutory tenant pursuant to the emergency housing rent control law or the city rent and rehabilitation law or article seven-c of the multiple dwelling law.

N.Y. Real Prop. Law § 235-f(a).  Although there is evidence suggesting that Plaintiff had a lease

---

[12] *See Schwartzbaum v. Emigrant Mortg. Co.*, No. 09-CV-3848, 2010 WL 2484116, at *1 (S.D.N.Y. 2010) ("[D]istrict courts 'generally should not entertain new grounds for relief or additional legal arguments not presented to the magistrate [judge].'" (quoting *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008)); *Gonzalez v. Garvin*, No. 99-CV-11062, 2002 WL 655164, at *1 (S.D.N.Y. Apr. 22, 2002) (dismissing one of the petitioner's objections to the magistrate judge's report and recommendation "because it offers a new legal argument that was not presented in his original petition, nor in the accompanying [m]emorandum of law" (citations omitted)); *Abu-Nassar v. Elders Futures, Inc.*, No. 88-CV-7906, 1994 WL 445638, at *4 n.2 (S.D.N.Y. Aug. 17, 1994) (characterizing arguments raised for the first time in objections to report and recommendation as "untimely" arguments that, if considered, "would unduly undermine the authority of the Magistrate Judge by allowing litigants the option of waiting until a [report and recommendation] is issued to advance additional arguments").

for the Property, the undisputed facts demonstrate that Plaintiff's lease was not valid. Indeed, Plaintiff reported to the Nassau County Police Department on October 12, 2009 that he was the "victim of a scam" and that Terezakis was the "true owner" of the Property. (*See* Pl. Supp. Dep. 2.) Plaintiff's invalid lease cannot support his tenancy claim in the Property.

In addition, the fact that Terezakis gave Plaintiff permission to stay at the Property did not make Plaintiff a tenant. There is no indication that this permission was formalized as a lease or rental agreement giving Plaintiff exclusive control or possession of the Property, and accordingly, rights as a tenant. *See Feder v. Caliguira*, 208 N.Y.2d 400, 404 (1960) ("It is the transfer of absolute control and possession of property at an agreed rental which differentiates a lease from other arrangements dealing with property rights."); *City of New York v. New York & Hong Kong Reciprocation Exch. Corp.*, 749 N.Y.S.2d 405, 407 (Sup. Ct. 2002) (noting that "the term 'tenant' would not include a licensee"); *Am. Jewish Theatre, Inc.*, 610 N.Y.S.2d at 257 (acknowledging the distinction between licensee and tenant and stating that where as a license "connotes use or occupancy" of a property, "a lease grants exclusive possession").

In sum, there is insufficient evidence to demonstrate that Plaintiff was a tenant. Because Plaintiff had no cognizable property interest in the continued occupancy of the Property as a licensee, the Court grants Defendants' motion for summary judgment as to this issue, and dismisses Plaintiff's due process claim.[13]

---

[13] Plaintiff also appears to assert a due process violation related to an alleged deprivation of his *personal* property at the time of the eviction. (*See* Pl. Obj. 13 ("Plaintiff had a right to be secure with regard to his own personal property and effects, which were unreasonably thrown out of the home while [Plaintiff] stood by an[d] watched helplessly.").) To the extent Plaintiff's claim is based on the removal of his personal property from the Property, Plaintiff has not shown a deprivation of his personal property, only that the property was moved. (*See* Pl. 56.1 ¶¶ 5–6 (stating that several police officers threw his property of the out of the house and Plaintiff's

### ii. False arrest

The County Defendants argued in their motion for summary judgment that there was probable cause to arrest Plaintiff for criminal trespass in the third degree. (*See* Def. Mem. 11−12.) Judge Locke agreed with Defendants, recommending that the Court dismiss Plaintiff's false arrest claim. (R&R 12–15.) Judge Locke found that because Plaintiff had no right to be on the Property after October 12, 2009, the date when he learned that his "lease" was invalid, and in consideration of the fact that Slevin did not arrest Plaintiff until October 23, 2009, after Terezakis and Gaetano filed criminal complaints against Smith, the County Defendants had probable cause to arrest Plaintiff. (R&R 14–15.) Plaintiff objects to Judge Locke's conclusions. Plaintiff contends that the evidence in the record demonstrates that he was not arrested for remaining on the Property after October 12, 2009, as Judge Locke determined, but rather for allegedly attempting to "get back inside the property line." (Pl. Obj. 14–15.) Plaintiff argues that because there is video evidence contradicting this alleged reason for arresting him, there was no probable cause for his arrest. (*Id*.) As set forth below, the Court finds that there are disputed issues of fact bearing on the probable cause determination, precluding summary judgment.

A Section 1983 false arrest claim "rest[s] on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause . . . ." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). "The elements of false arrest require the

---

neighbors, family and friends packed the property into a van).) This is insufficient to state a due process claim. *See Kostiuk v. Town of Riverhead*, 560 F. Supp. 603, 609 (E.D.N.Y. 1983) ("[W]here as here, the person knows where his or her property is, knows he or she will soon get it back . . . and the property is not expected to be and is not, in fact, permanently damaged, then there is no constitutional deprivation of property."). To the extent that Plaintiff is asserting a deprivation of property based on allegations that his personal property was damaged, the Court declines to address this claim as it appears to be based on a one-sentence allegation in Plaintiff's objections to the R&R and has not been fully briefed.

plaintiff to establish that '(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Bernshtein v. City of New York*, 496 F. App'x 140, 141 (2d Cir. 2012) (quoting *Weyant*, 101 F.3d at 853); *see also Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003). Probable cause allows an officer to confine an individual, therefore, "probable cause is a complete defense to a claim of false arrest." *Smith v. Tobon*, 529 F. App'x 36 (2d Cir. 2013) (citing *Williams v. Town of Greenburgh*, 535 F.3d 71, 78–79 (2d Cir. 2008)); *see also Ackerson v. City of White Plains*, 702 F.3d 15, 21 (2d Cir. 2012) ("Probable cause 'is a complete defense to an action for false arrest.'" (quoting *Weyant*, 101 F.3d at 852)); *Jenkins v. City of New York*, 478 F.3d 76, 86–87 (2d Cir. 2007) (same). "A police officer has probable cause for an arrest when he has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime[.]'" *Swartz v. Insogna*, 704 F.3d 105, 111 (2d Cir. 2013) (quoting *Weyant*, 101 F.3d at 852); *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (same). Such knowledge or information can be based on information provided by an eyewitness, unless the circumstances would raise a doubt as to the eyewitness' veracity. *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (citing *Singer*, 63 F.3d at 119). The question is whether the facts known to the arresting officer, at the time of the arrest, objectively provided probable cause to support the arrest. *Gonzalez*, 728 F.3d at 155.

Here, the County Defendants' sole basis for seeking dismissal of Plaintiff's false arrest claim rests on their contention that there was probable cause to arrest Plaintiff for criminal

trespass in the third degree.[14]  (Def. Mem. 11–12.)  Under New York law, a person is guilty of

criminal trespass in the third degree when, among other things, "he knowingly enters or remains

unlawfully in a building upon real property . . . which is fenced or otherwise enclosed in a

manner designed to exclude intruders."  N.Y. Penal Law § 140.10.  Accordingly, the probable

cause determination here rests on whether the undisputed facts demonstrate that Slevin and

Helmke were objectively reasonable in believing that Plaintiff "knowingly enter[ed] or

remain[ed] unlawfully" at the Property.  (*Id.*)  As discussed below, several disputed facts bearing

on the reasonableness of Slevin and Helmke's probable cause determination, precludes a finding

that, as a matter of law, Slevin and Helmke had probable cause to arrest Plaintiff.

### 1.  Plaintiff's alleged attempt to reenter the Property

First, there is a dispute as to what conduct led to Plaintiff's arrest.  The County

Defendants assert that they had probable cause to arrest Plaintiff for occupying the Property after

he learned on October 12, 2009 that he had no legal right to be on the Property.  (Def. Mem.

11−13.)  However, Slevin testified at his deposition that he arrested Plaintiff for trying to *reenter*

the Property after he complied with their order to vacate the Property.  (Slevin Dep. 133:13–15.)

To the extent County Defendants' basis for asserting probable cause is that Plaintiff tried to

reenter the Property shortly before the arrest (and after removing himself from the Property), the

video recording flatly contradicts this factual assertion.  (*See* Video Recording of Arrest.)  The

video recording evidence depicts Plaintiff standing on the public sidewalk, with his personal

belongings packed in a nearby van, speaking on a telephone.  (*Id.*)  It then depicts Plaintiff

---

[14]  As Judge Locke noted, although Plaintiff was charged with both criminal trespass in the second degree and criminal trespass in the third degree, Defendants only address the latter charge in their motion for summary judgment.  (*See* R&R 13 n.5; Def. Mem. 11–12.)

stating to the police officers, that "my lawyer said you're doing a wrongful eviction." (*Id.*) Plaintiff was still standing on the sidewalk in front of the Property. Slevin responds to Plaintiff, "tell your lawyer you're under arrest," and then handcuffs Plaintiff and directs him to the police vehicle. (*Id.*) These facts and circumstances contradict the County Defendants' facts — that Plaintiff tried to reenter the Property — which gave rise to County Defendants' probable cause. This conflicting issue of whether Plaintiff attempted to reenter the Property must be decided by a jury. A jury hearing Plaintiff's testimony that he had removed himself from the Property and packed his belongings in his vehicle, and seeing the video recording which depicts Plaintiff standing on the sidewalk, speaking on a telephone, and stating to the officers that his lawyer said that they were conducting an illegal eviction, followed by Slevin placing Plaintiff in handcuffs, could reasonably conclude that Plaintiff was not reentering the Property and thus there was no probable cause for Slevin or Helmke to arrest Plaintiff. *See Scott v. Harris*, 550 U.S. 372, 380−81 (2007) ("Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape."). Thus, County Defendants' claim of probable cause based on Plaintiff's alleged attempt to reenter the Property must be decided by a jury.

### 2. Plaintiff's alleged unlawful entry or stay on the Property

The Court also finds that there are factual disputes which preclude a finding as a matter of law that the officers were objectively reasonable in believing that Plaintiff *knowingly* entered or remained on the Property unlawfully. The County Defendants argue that "[b]ecause the criminal complaint filed by Terezakis and Gaetano was forwarded to . . . Slevin on October 16, 2009 to investigate, Slevin had reason to believe that Terezakis did not authorize or permit

Plaintiff to remain at the Premises." (Def. Resp. 9.) However, upon review of this complaint, the Court does not find that it establishes probable cause as a matter of law, but rather creates issues of fact to be decided by a jury.

The Trespass Complaint, authored by Terezakis, states as follows:

> [C]omplaint was file[d] with the 1st [Precinct] . . . . On 10-12-09 [a] phone call came to my office by another agent that [sic] locks w[ere] changed at a property that I own 79 William Street. A gentleman was in my home[.] [Plaintiff] was the person renting the home. I went to [the] home and [Plaintiff] showed me a lease that was signed by him [and] another party [and] he had rent receipts[.] [I] filed a report [and] I [am] still presently waiting to he[ar] from the de[tectives]. [Plaintiff] called on 10/13/09 and asked when he was going to be able to collect his money that he [paid] to the other party [and] he would leave my home.

(Trespass Complaint 2.) The Trespass Complaint explicitly references the lease and rental receipts that Plaintiff believed entitled him to occupy the Property. (*Id*.) Therefore, Slevin and Helmke were aware, by virtue of the Trespass Complaint, that Plaintiff believed he had a lawful right to occupy the Property. Furthermore, the record indicates that a week prior to Plaintiff's arrest, police officers were called to the Property by Plaintiff and were presented with the same information, namely, that Plaintiff had a signed lease for the rental of the Property and paid a deposit, and Terezakis and Gaetano, purporting to be the owners of the Property, insisted that they had not authorized Plaintiff's rental of the Property. Those officers informed the alleged owners this was a "civil matter."[15] (Pl. 50-h Tr. 51:7–13; Gaetano Dep. 52:18–20.) In addition,

---

[15] The Court notes that County Defendants' conflicting theories as to who owns the Property, alone, constitute material disputes of fact, which — as these conflicting stories were known to Slevin and Helmke at the time of the arrest — bear on whether Slevin's and Helmke's understanding as to who could remove Plaintiff from the Property was reasonable. (*See* Gaetano Dep. 7:19–22,11:10–19, 35:6–36:19 (testifying that she had an "ownership interest" in the Property; Def. 56.1 ¶ 3 (stating that the Property was owned by Zurich Associates); Trespass

according to Plaintiff, he is the one who summoned the police to the Property on the day of his arrest, and indeed, had called the police at least twice prior to that date in an effort to resolve the issue of his occupancy at the Property. (Pl. 50-h Tr. 45:17–48:9, 59:11–24, 74:3–5.) Reviewing these facts and circumstances which were known to Slevin and Helmke at the time of Plaintiff's arrest, and drawing all reasonable inferences in Plaintiff's favor, a reasonable jury could find that an objective police officer, with this information, could not have reasonably concluded that Plaintiff "knowingly" entered or remained on the Property unlawfully, as required to be charged with criminal trespass in the third degree. *See Zaniewska v. City of New York*, No. 11-CV-2446, 2013 WL 3990751 at *7 (E.D.N.Y. 2013) ("If Plaintiff honestly believed that [he] was licensed to enter or remain on the premises, she could not be found guilty of any degree of trespass."); *People v. Basch*, 36 N.Y.2d 154 (1975) ("[I]n prosecuting one for trespass in violation of section 140.05 [of the New York Penal Law], it must be proved that such person 'knowingly' entered the premises without license or privilege, and, therefore, a person who enters upon premises accidentally, or who honestly believes that he is licensed or privileged to enter, is not guilty of any degree of criminal trespass."); *People v. Rodriguez*, 988 N.Y.S.2d 524 (App. Div. 2014) ("Assuming, without deciding, that defendant's right to remain on the premises had been revoked, it was nonetheless reasonable, under the facts and circumstances established, for defendant to conclude that he had a license and privilege to remain on the premises. Thus, such a belief, even if mistaken, negated the element of knowingly remaining unlawfully on the

Complaint (statement by Terezakis indicating that he is the owner of the Property); Nassau County Police Dep't Case Report, annexed to the Ben Sorek Decl. as Ex. I (stating that Property "belongs to" Terezakis and describing Gaetano as "real estate agent"); Statement Form by Anna Gaetano, annexed to the Ben-Sorek Decl. as Ex. H (statement from Gaetano stating that she "purchased the [Property] in April 2009").).

premises necessary to convict defendant of trespass.") (table decision); *People v. Luke*, 955 N.Y.S.2d 465, 469 (App. Div. 2012) (Defendant's "testimony that he was visiting his 'aunt' . . . was sufficient to support his reasonable belief that he was licensed and privileged to be in the building . . . . and negated the element of 'knowing and unlawfully remaining.'").  The Court therefore cannot find, as a matter of law, that it was reasonable for Slevin and Helmke to believe that Plaintiff knowingly entered or occupied the Property unlawfully.  Accordingly, the Court denies County Defendants' motion for summary judgment as to the false arrest claim.[16] *See Jenkins*, 478 F.3d at 88 ("If [an] officer's reasonableness [as to his probable cause determination] depends on material issues of fact, then summary judgment is inappropriate for . . . [a] federal false arrest claim[]."); *Brown v. G.A. Hoffman*, 997 N.Y.S.2d 767, 770 (App. Div. 2014) (finding that the "defendant did not establish as a matter of law that he had arguable probable cause to arrest plaintiff for criminal trespass because issues of fact exist as to whether, at the time of arrest, it was reasonable for defendant to believe that plaintiff was disobeying a

---

[16] The Court notes that the circumstances here are distinct from those in *Finigan v. Marshall*, 574 F.3d 57, 63 (2d Cir. 2009).  In *Finigan*, the plaintiff argued that her "legal title conferr[ing] a right of entry to the premises defeats a finding of probable cause as a matter of law." *Id*.  The Second Circuit disagreed, noting that "even if the total sum of evidence . . . might not persuade a jury to convict for criminal trespass because of [the plaintiff's] belief in her right of entry, '[o]nce officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury.'" *Id*.  At the time of the plaintiff's arrest in *Finigan*, the police officer "had personal knowledge that [the owner of the home] resided alone" and that the plaintiff had moved out of the home earlier. *Id*. at 60.  By contrast, here, there are questions of fact as to (1) whether Plaintiff actually reentered the Property, as claimed by Slevin, and contradicted by Plaintiff and the video recording evidence, and (2) whether Slevin and Helmke had affirmative knowledge that Plaintiff believed he had a lawful right to occupy the Property and therefore was not trespassing.  Under the circumstances presented here, where there is an issue of fact that could result in a jury finding that Plaintiff was "not . . . a trespasser and the[] legal significance [of those facts] had been pointed out" to Slevin and Helmke, summary judgment is not appropriate. *See People v. Finch*, 23 N.Y.3d 408, 418 (2014) (finding that evidence of probable cause to arrest the defendant for trespassing was insufficient where the police officer knew at a prior date that the defendant had a lawful right to be at the property).

lawful order").[17]

### iii.  Qualified immunity

Judge Locke found that even if the evidence is insufficient to show actual probable cause,

there is sufficient evidence demonstrating arguable probable cause, entitling the County

Defendants to qualified immunity, and recommends that the Court grant summary judgment to

the officers on the basis of qualified immunity.  (R&R 15.)  The Court declines to adopt this

recommendation.

The Second Circuit has recognized that an officer's probable cause determination is

objectively reasonable if there was "arguable" probable cause at the time of arrest, "that is, if

officers of reasonable competence could disagree on whether the probable cause test was met."

*Gonzalez*, 728 F.3d at 157 (citing *Jenkins*, 478 F.3d at 86–87) (internal quotation marks omitted);

*see also Zalaski*, 723 F.3d at 390 ("Even where a reviewing court . . . concludes that probable

cause to arrest was lacking in a given case, an officer will still be entitled to qualified immunity .

---

[17]  The Court further notes that, in contrast to the circumstances here, probable cause has been readily found in criminal trespass cases where it is clear to the police officers that the alleged trespasser had no legal right to be on the premises, and the alleged trespasser made no claims of lawful presence on the property.  *See People v. Wighfall*, 866 N.Y.S.2d 625, 625–26 (App. Div. 2008) ("Defendant's admission that he did not know anyone in the building and had no legitimate reason to be there . . . . [and his] false response about visiting a nonexistent tenant [] provided probable cause to arrest defendant for criminal trespass."); *People v. Rodriguez*, 552 N.Y.S.2d 13, 14 (App. Div. 1990) (finding that the police officer had probable cause to arrest defendant for criminal trespass when he "fail[ed] to state his purpose" for occupying a private building); *Matter of Troy F.*, 526 N.Y.S.2d 521, 523 (App. Div. 1988) (finding that there was probable cause to arrest the defendant for criminal trespass in the third degree where he "failed to allege any license or privilege" to be on the premises).  *But see Zaniewska v. City of New York*, No. 11-CV-2446, 2013 WL 3990751 at *7 (E.D.N.Y. 2013) ("If Plaintiff honestly believed that [he] was licensed to enter or remain on the premises, [he] could not be found guilty of any degree of trespass.").  In light of the questions of fact bearing on the reasonableness of Slevin and Helmke's probable cause determination, the Court denies summary judgment on this claim.

. . if he can establish that there was arguable probable cause to arrest."). "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004); *see also Tabor v. New York City*, No. 11-CV-195, 2013 WL 4775608, at *6 (E.D.N.Y. Sept. 6, 2013); *Powell v. Murphy*, No. 11-CV-2561, 2013 WL 4735692, at *5 (E.D.N.Y. Sept. 3, 2013). "In this respect, the qualified immunity test is more favorable to the officers than the one for probable cause." *Ackerson*, 702 F.3d at 21 (internal quotation and citation omitted). However "[a]rguable probable cause should not be misunderstood to mean 'almost' probable cause . . . . If officers of reasonable competence would have to agree that the information possessed by the officer at the time of the arrest did not add up to probable cause, the fact that it came close does not immunize the officer." *Gonzalez*, 728 F. 3d at 157 (quoting *Jenkins*, 478 F.3d at 86–87).

Here, County Defendants argue that Slevin and Helmke are entitled to qualified immunity because "it was objectively reasonable for them to believe that their acts did not violate" any constitutional rights because they had arguable probable cause to arrest Plaintiff. (Def. Mem. 19–20.) However, in light of the disputes of fact described above — which bear on the basis for Plaintiff's arrest and the information known to the officers at the time of Plaintiff's arrest — the circumstances surrounding the arrest raise an issue as to whether the officers could reasonably believe that Plaintiff knowingly occupied the Property unlawfully, qualified immunity cannot be resolved at this stage of the litigation. *See Barksdale v. Colavita*, 506 F. App'x 82, 85 (2d Cir. 2012) ("Summary judgment on qualified immunity grounds is not appropriate where there are facts in dispute that are material to a determination of reasonableness [of probable cause finding]." (citing *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999)));

*Zalaski v. City of Hartford*, 462 F. App'x 13, 15 (2d Cir. 2011) (finding that the defendants were not entitled to qualified immunity as a matter of law "as long as distinct questions of fact persist[ed] regarding the motive for the arrest and the existence of probable cause"); *Stephenson v. Doe*, 332 F.3d 68, 77 (2d Cir. 2003) ("Although the qualified immunity issue should be resolved at the earliest possible stage in litigation, summary judgment is not appropriate when there are material factual disputes." (internal citation and quotation marks omitted))); *Smith v. City of Syracuse*, No. 10-CV-352, 2012 WL 280735, at *9 (N.D.N.Y. Jan. 31, 2012) ("Having found . . . that questions of fact remain surrounding the defendants' claim of probable cause, the court also finds that questions of fact remain on the issue of qualified immunity.").

### iv.   Malicious prosecution

Judge Locke found, in accordance with his false arrest analysis, that there was probable cause for Plaintiff's prosecution, and therefore, recommends that the Court dismiss Plaintiff's malicious prosecution claim.  (R&R 17–18.)  Plaintiff argues that given the disputed facts, the determination of whether there was probable cause should be decided by a jury.  (Pl. Obj. 15−17.)  As discussed above, the Court declines to adopt Judge Locke's probable cause finding. However, the Court finds that Plaintiff has failed to show that the underlying charges for criminal trespass terminated in his favor.  Accordingly, Plaintiff's malicious prosecution claim is dismissed.

 To state a malicious prosecution claim under Section 1983, a plaintiff must show "(1) the initiation or continuation of a criminal proceeding against plaintiff, (2) termination of the proceeding in plaintiff's favor, (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions."  *Morris v. Silvestre*, --- F. App'x ---, ---, 2015 WL 1061124, at *1 (2d Cir. Mar. 12, 2015) (quoting *Manganiello v. City of New York*,

612 F.3d 149, 161 (2d Cir. 2010)) (internal quotation marks omitted); *see also Lewis v. City of New York*, 591 F. App'x 21, 22 (2d Cir. 2015) (stating the elements of a malicious prosecution claim under New York law); *Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010) (same); *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997) (same); *Adams v. City of New York*, 993 F. Supp. 2d 306, 325 (E.D.N.Y. 2014) (same). In addition, a plaintiff must show a "sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rutigliano v. City of New York*, 326 F. App'x 5, 8–9 (2d Cir. 2009) (quoting *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000)).

The first element of a malicious prosecution claim, favorable termination, requires Plaintiff to "demonstrate a final termination of the criminal proceeding in [his] favor, or at least 'not inconsistent with his innocence.'" *Okoi v. El Al Israel Airlines*, 378 F. App'x 9, 11 (2d Cir. 2010) (alteration in original) (quoting *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 196 (2000)). Dismissals based on legal insufficiency generally do not satisfy the favorable termination element. *See Breen v. Garrison*, 169 F.3d 152, 153 (2d Cir. 1999) (finding that the underlying charge was dismissed for facial insufficiency and therefore did not satisfy favorable termination element); *Gem Fin. Serv., Inc. v. City of New York*, No. 13-CV-1686, 2014 WL 1010408, at *10 (E.D.N.Y. Mar. 17, 2014) (collecting cases). This is, in part, because a dismissal for legal insufficiency lacks the requisite finality to constitute a *termination*. *See Smith-Hunter*, 95 N.Y.2d at 197 ("[A] plaintiff in a malicious prosecution action must show, as a threshold matter, that the criminal proceeding was *finally* terminated. Indeed, it is well settled that any disposition of the criminal action which does not terminate it but permits it to be renewed . . . cannot serve as a foundation for the [malicious prosecution] action." (alterations in original) (citation and internal quotation marks omitted)); *McGee v. Doe*, 568 F. App'x 32, 39−40 (2d Cir. 2014)

(discussing *MacFawn v. Kresler*, 88 N.Y.2d 859 (1996), in light of *Smith-Hunter* and concluding that dismissal was not final because facts did not show "the formal abandonment of the proceedings by the public prosecutor" (quoting *Smith-Hunter*, 95 N.Y.2d at 198)).

As set forth in the March 2010 Decision and June 2010 Decision issued by the Nassau County Criminal Court, the criminal trespassing charges against Plaintiff were dismissed for facial insufficiency. In the March 2010 Decision, Judge Engel concluded that "[t]he instrument charging [Plaintiff] with [c]riminal [t]respass in the [t]hird [d]egree is clearly missing a necessary element of the crime and is insufficient on its face." (March 2010 Decision 5.) Because the Information charging criminal trespass in the third degree was facially insufficient, Judge Engel dismissed this charge against Plaintiff. (*Id*.) In the June 2010 Decision, Judge Engel also dismissed the criminal trespass in the second degree charge against Plaintiff for facial insufficiency. (June 2010 Decision 4–5.) Judge Engel reasoned that the criminal information contained conflicting statements as to who owned the Property which were "no more valid and authenticated than [Plaintiff's] representation . . . that he had a valid lease." (June 2010 Decision 5.) Accordingly, Judge Engel determined that the accusatory instrument against Plaintiff failed to establish the elements of the charge — that Plaintiff "knowingly enter[ed] or remain[ed] unlawfully" on the Property. (*Id*. at 4–5.) Because neither the May 2010 Decision nor the June 2010 Decision adjudicated the merits of the underlying charges against Plaintiff or reflected a *termination* of those charges,[18] they cannot satisfy the favorable termination element as a matter of law. *See Breen*, 169 F.3d at 153 ("Because this was not a decision on the merits, an essential

---

[18] The Court notes that Judge Engel styled both the May 2010 Decision and the June 2010 Decision as decisions based on "facial insufficiency." (May 2010 Decision 2; June 2010 Decision 2.)

element of a cause of action for malicious prosecution, the district court did not err in dismissing [the plaintiff's] claim for malicious prosecution."); *People v. Moore*, 5 N.Y.3d 725, 727 (2005) ("Since the information and supporting deposition here fail to allege facts establishing that the campus building defendant entered into was in any way "fenced or otherwise enclosed . . ." — a required element of the crime — it was insufficient to establish criminal trespass in the third degree . . . . [and] was properly dismissed as facially insufficient."); *De Cicco v. Madison Cnty.*, 750 N.Y.S.2d 371, 373 (App. Div. 2002) ("A dismissal based upon the legal insufficiency of a charging instrument is not a termination in favor of plaintiff within the context of a malicious prosecution claim." (citation omitted)). Accordingly, the County Defendants' motion for summary judgment as to the malicious prosecution claim is granted.

### v. Abuse of process

Judge Locke recommends that the Court dismiss Plaintiff's abuse of process claim, finding that the undisputed facts demonstrate that Slevin and Helmke were "justified in their conduct[,] having probable cause for the arrest." (R&R 19.) Plaintiff objects to Judge Locke's probable cause determination. (Pl. Obj. 15–18.) For the reasons set forth below, the Court declines to adopt Judge Locke's recommendation.

An abuse of process claim arises under Section 1983 when a defendant "(1) employs regularly issued legal process to compel performance or forbearance of some act[,] (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Coleman v. City of New York*, 585 F. App'x 787, 788 (2d Cir. 2014) (quoting *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994)); *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 727 (S.D.N.Y. 2012) (quoting *Savino*, 331 F.3d at 76). It is not sufficient to allege that a defendant had an improper motive in initiating the legal process;

a plaintiff must allege that the legal process was instituted to gain a collateral objective. *Savino*, 331 F.3d at 77–78 ("Although [the complaint] does allege that . . . defendants acted with an improper *motive*, [Plaintiff] has not presented any evidence that they had an ulterior *purpose* or *objective* in facilitating his prosecution."); *Mangino v. Patchogue*, 739 F. Supp. 2d 205, 232 (E.D.N.Y. 2010) ("[T]he Second Circuit expressly distinguishes between a 'malicious motive' and an 'improper purpose;' only the latter suffices to meet the 'collateral objective' prong of the abuse of process standard." (citations omitted)), *recons. granted on other grounds*, 814 F. Supp. 2d 242; *Kraft v. City of New York*, 696 F. Supp. 2d 403, 416 (S.D.N.Y. 2010) ("The crux of a malicious abuse of process claim is the collateral objective element."), *aff'd*, 441 F. App'x 24 (2d Cir. 2011).

The County Defendants argue there is insufficient evidence establishing that they had the requisite intent to harm Plaintiff or that they lacked justification for the arrest. (Def. Mem. 14.) The Court disagrees with this argument. A lack of probable cause "gives rise to an inference of malice, supporting a finding of 'intent to harm.'" *Sforza v. City of New York*, No. 07-CV-6122, 2009 WL 857496, at *17 (S.D.N.Y. 2009) (citing *Berman v. Silver, Forrester & Schisano*, 549 N.Y.S.2d 125, 127 (2d Dep't 1989)). Thus, in accordance with the Court's finding, set forth above, that there is sufficient evidence from which a jury could find lack of probable cause, this gives rise to an inference of malice sufficient to support a finding of intent to harm. Plaintiff can demonstrate "intent to harm."

The final element of an abuse of process claim requires Plaintiff to show that Defendants had an "improper collateral objective," meaning that when they arrested and prosecuted Plaintiff, Defendants had an "improper purpose . . . beyond or in addition to [Plaintiff's] criminal prosecution." *Savino*, 331 F.3d at 77. By proffering evidence suggesting that Slevin and

Helmke only prosecuted Plaintiff to conceal the fact that they were unlawfully removing him from the Property, Plaintiff has met this element as well. (*See* Pl. 56.1 ¶¶ 10–11 (alleging that Defendants made the "'decision' to arrest Plaintiff after he was evicted . . . [and] created supporting depositions . . . to support and further the arrest of [Plaintiff] for criminal trespass").) Construing the facts in Plaintiff's favor, this evidence demonstrates that on October 23, 2009, (1) Slevin and Helmke arrived at the Property after Gaetano promised to get her "friend" to assist with the "eviction" of Plaintiff, (Pl. 50-h Tr. 73:12−73:17), (2) Slevin was aware that Plaintiff believed that he was entitled to occupy the Property, having initially signed a lease for the Property, (*see* Video Recording of Arrest (Plaintiff explaining that he had a lease for the Property); Slevin Dep. 107:9–17 (Slevin testifying that he was aware that Plaintiff had a lease for the Property), (3) Plaintiff left the Property after being told to do so by Slevin and other police officers while still claiming that he had a lawful reason to be at the Property, (*see* Video Recording of Arrest), (4) Plaintiff was ultimately arrested while standing on public property only after informing Slevin that his attorney advised him that the officers were performing an "illegal eviction," (*id.*), and (5) Slevin's justification for the arrest — that Plaintiff tried to reenter the Property — is belied by the video evidence, (*compare* Slevin Dep. 133:13–15 *with* Video Recording of Arrest). A reasonable jury could determine based on these facts that Slevin and Helmske arrested and prosecuted Plaintiff for the purpose of concealing an unlawful "eviction." Because such an objective is "outside the intended scope of operation of the process employed," it is an improper collateral objective. *See Murphy v. City of Rochester*, 986 F. Supp. 2d 257, 269 (citation omitted); *Hernandez v. Wells*, No. 01-CV-4376, 2003 WL 22771982, at *9 (S.D.N.Y. 2003) (noting that a corrections officers' objective to "safeguard[] [his] own employment lies outside the legitimate goal of criminal process," meeting the collateral objective standard). The

Court denies the County Defendants' motion to dismiss Plaintiff's abuse of process claim.

### vi. Claims against the Owner Defendants

Judge Locke recommends that the Court dismiss the Section 1983 claims asserted against the Owner Defendants. (R&R 22–23.) Judge Locke based this conclusion, in part, on his finding that there is insufficient evidence demonstrating that the Owner Defendants acted under color of state law. (*Id.* at 22.)

With respect to Gaetano, the Court agrees with Judge Locke's conclusion that there is insufficient evidence demonstrating that she acted under the color of state law, a necessary requirement for establishing liability under Section 1983. *See Cornejo v. Bell*, 592 F. 3d 121, 127 (2d Cir. 2010) (In order to sustain a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege (1) that the challenged conduct was "'committed by a person acting under color of state law,'" and (2) that such conduct "'deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994) (internal quotation marks omitted))). The actions of a private party may be deemed state action only if "there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be treated fairly as that of the state itself." *Am. Mfrs. Mt. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999) (citation and internal quotation marks omitted). Here, the only evidence connecting Gaetano to the alleged constitutional violations is the fact that she may have summoned Slevin or Helmke to assist with the "eviction" of Plaintiff. However, a mere allegation that a private party provided information to the police, even if false, is insufficient to state a claim under Section 1983. *See Castro v. Cnty. of Nassau*, 739 F. Supp. 2d 153, 173 (E.D.N.Y. 2010) ("[T]he provision of information to or summoning of police officers, even if that information is false or results in the officers taking

37

affirmative action, is not sufficient to constitute joint action with state actors for purposes of [Section] 1983."). Without more evidence demonstrating that Gaetano acted under "color of state law," Plaintiff cannot sustain his Section 1983 claims against her. Accordingly, the Court dismisses any claims arising under Section 1983 against Gaetano.

While Terezakis answered the Complaint, (Docket Entry No. 6), it appears that he has not otherwise defended or participated in this action against him. He failed to appear at his deposition. (*See* Statement on the Record dated May 14, 2013, annexed to the Calliste Decl. as Ex. H (noting Terezakis' failure to appear for his deposition).) He also failed to respond to Magistrate Judge William D. Wall's October 23, 2013 order, requiring him to appear for a deposition.[19] (Order dated Oct. 23, 2013, Docket Entry No. 77.) In addition, Judge Wall warned Terezakis that "if he fails to comply with this order or to inform the court in writing of good cause why he could not comply, the sanctions sought by [P]laintiff will be granted on a recommendation to the District Judge that the answer be stricken and a default entered." (*Id.*) In light of these failures, the Court strikes Terezakis' Answer to the Complaint. Plaintiff is ordered to move for default judgment within thirty days of the date of this order.

---

[19] On September 27, 2013, Plaintiff moved for sanctions, including entry of default judgment, and moved to compel Terezakis to appear at a deposition, pursuant to Rule 37 of the Federal Rules of Civil Procedure. On October 23, 2013, Judge Wall denied Plaintiff's motion for sanctions without prejudice to renew, and granted Plaintiff's motion to compel. (Docket Entry No. 77.)

### III.   Conclusion

For the foregoing reasons, the Court adopts in part, and declines to adopt in part, Judge Locke's R&R.  The Court grants the County Defendants' motion for summary judgment with respect to Plaintiff's due process and malicious prosecution claims, and denies the motion with respect to Plaintiff's false arrest and abuse of process claims.


SO ORDERED:


_____
      s/ MKB
MARGO K. BRODIE
United States District Judge


Dated: March 31, 2015
        Brooklyn, New York